UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHARLES DONELSON, #R02279, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) ) |
| JOSE M. PRADO, CHRIS DEVER, MARK COLE, KARL KIRK, JUSTIN BRYANT, SEAN HAYDEN, CORRECTIONS OFFICER HARRINGTON, SERGEANT WILLIAMS, LIEUTENANT MALKOWSKI, FRANK SHAW, P. TOLLEY, LIEUTENANT MICHELLE, SHAUN BASS, LIEUTENANT JOHNSON, W. BRONZWIK, CORRECTIONS OFFICER NORMAN, ASSISTANT WARDEN REID, CINDY LYNCH, WENDY NOVARRO BLANK, CHARLES WOODS, WAYNE FINK, KEITH FRAINEY, SHIFT COMMANDER JOHN DOE, and JOHN DOES 1-10, in their individual and official capacities, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) 09 C 6227 Judge Feinerman |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Charles Donelson filed this action under 42 U.S.C. § 1983 against twenty-two named defendants and eleven John Does, alleging violations of the Eighth Amendment and Illinois tort law. Nineteen of the twenty-two named defendants have moved to dismiss Counts II-V of Donelson's five-count complaint pursuant to Rule 12(b)(6). That motion (Doc. 86) is granted in part (as to Count III and Defendant Shaw) and denied in part (as to Counts II and IV-V). Defendants Lynch and Tolley have filed their own motion to dismiss and/or for summary judgment (Doc. 78), which is granted in part (as to dismissal) and denied as moot in part (as to

-1-

summary judgment). And Defendant Bronzwik has filed a separate motion to dismiss (Doc. 101), which is granted.

**Background**

The facts alleged in the amended complaint (Doc. 45) are assumed true on a Rule 12(b)(6) motion. *See Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 763 (7th Cir. 2010). Donelson is an inmate serving lengthy sentences in the Illinois Department of Corrections ("IDOC") for murder, home invasion, and aggravated criminal sexual assault with a weapon. All Defendants are employed by IDOC: Correctional Officers Jose Prado, Chris Dever, Mark Cole, Karl Kirk, Justin Bryant, Sean Hayden; Officers Harrington, Bronzwik,[1] and Norman; Lieutenants Malkowski, Michelle, and Johnson; Sergeant Williams; Assistant Warden Reid; Warden Frank Shaw; Cindy Lynch, Wendy Novarro Blank, Charles Woods, Wayne Fink, P. Tolley, and Keith Frainey, all employees in the IDOC mental health department;[2] and Shaun Bass, an IDOC employee with an unspecified portfolio. The complaint also names a John Doe Shift Commander and ten other John Does.

At the behest of Lynch, Blank, Woods, Fink, Tolley, and Frainey, Donelson was designated a "sexual predator" for internal IDOC purposes. The designation, which resulted in signs being posted outside his cell identifying him as a sexual predator, placed Donelson at substantial risk of harm from other inmates. The designation also resulted in Bass assigning

---

[1] "Bronzwik" maintains in his separate motion to dismiss that his name is Wayne Brunswig. *See* Doc. 101 at 1-2. Because Donelson's amended complaint governs the facts, this opinion will refer to this particular defendant as Bronzwik.

[2] While Donelson alleges "[o]n information and belief" that Lynch and Tolley are IDOC employees (Doc. 45, ¶ 19), Lynch and Tolley maintain in connection with their separate motion to dismiss (Doc. 78) that they are employees of Wexford Health Sources, Inc. *See* Doc. 79, ¶¶ 5, 14. The dispute is immaterial to this opinion.

Donelson to share a cell with one Davenport, another sexual predator at Stateville Correctional Center, on March 27, 2009. Davenport told Donelson that he was sexually attracted to men, that he could not control himself around Donelson, and that he was going to rape Donelson. Davenport told Harrington the same thing, and also informed Johnson that he wanted his own cell because he was a sexual predator who could not control his urges.

Between March 27 and March 30, 2009, Donelson wrote "kites" to Malkowski, Michelle, Bronzwik, Williams, and Norman explaining that he did not feel safe living with Davenport and requesting a cell transfer. Donelson did not receive a response to his kites. On March 30, 2009, while Donelson and Davenport were in their cell, Davenport tried to cut off his own penis. Covered in blood and wearing only a t-shirt and boxer shorts, Davenport yelled, "I had to cut it off," "got to get rid of it," and "I'm a sexual predator." Davenport was removed from the cell for the night.

On March 31, 2009, Donelson told Johnson that he did not wish to live with Davenport, explaining that he could not sleep because he feared being raped or killed. An "extraction team" including Prado, Dever, Kirk, Bryant, Coles, and Hayden soon arrived to remove Donelson from his cell. Although Donelson was compliant, the officers sprayed him with pepper spray, punched him, knocked his head against the wall ten times, kicked him in the chest and stomach, banged his head against the cell bars, and hit him with their protective shields. The officers then handcuffed and shackled Donelson and, as they dragged him from the cell, threw his head into the ground twice. As the officers walked Donelson toward the showers, they continued to spray him with pepper spray, punch him in the head and body, and throw his head against objects protruding from cell doors. When they reached the showers, the officers slammed Donelson's head against the wall, pinned him there with extreme pressure, and again sprayed him with

pepper spray. After being knocked to the ground, Donelson was dragged under an extremely hot shower, which burned his skin. He also was bleeding from his head and face.

A medical technician came to the shower, looked at Donelson in a cursory manner, but did not perform a real physical examination. The technician told the extraction team to let water run on Donelson's head. The officers held Donelson's head under running water, making it difficult for him to breathe. On the way back to his cell, Donelson's head and body were once again thrown into walls and cell doors. When Donelson reached his cell, he found that Davenport had returned. The two continued to live together until Donelson was transferred to another correctional facility in April 2010.

Donelson's five-count amended complaint alleges in Count I that he was subject to excessive force in violation of the Eighth Amendment; in Count II that he was denied adequate medical treatment in violation of the Eighth Amendment; in Count III that his sexual predator designation and being celled with Davenport subjected him to a substantial risk of harm in violation of the Eighth Amendment; and in Counts IV and V that he was subjected to an assault and a battery in violation of Illinois tort law. Donelson seeks compensatory and punitive damages, costs, fees, and an injunction requiring the lifting of his sexual predator classification.

**Discussion**

The principal motion to dismiss (Doc. 86) seeks dismissal of Counts II-V. To survive a Rule 12(b)(6) motion, a complaint must overcome "two easy-to-clear hurdles": (1) "the complaint must describe the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds on which it rests"; and (2) "its allegations must plausibly suggest that the plaintiff has the right to relief, raising that possibility above a speculative level." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008) (citation and internal quotation

marks omitted). Where the well-pleaded facts "do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009) (internal quotation marks omitted).

### A. Count II: Denial of Medical Treatment

The Eight Amendment obligates state prison officials, through the Fourteenth Amendment, "to provide adequate medical care to incarcerated individuals." *Boyce v. Moore*, 314 F.3d 884, 888-89 (7th Cir. 2002). Prison officials violate this duty if they are deliberately indifferent to the serious medical needs of their prisoners. *See Greeno v. Daley*, 414 F.3d 645, 652-53 (7th Cir. 2005). Deliberate indifference requires actual knowledge of a serious risk to the prisoner's health. *See Fisher v. Lovejoy*, 414 F.3d 659, 662 (7th Cir. 2005). If a medical officer opines that no risk exists or that a certain course of medical treatment is sufficient, a layperson ordinarily cannot be deemed to know otherwise, and thus cannot be held to have been deliberately indifferent to a prisoner's serious medical needs. *See Greeno*, 414 F.3d at 656 ("If a prisoner is under the care of medical experts … a non-medical prison official will generally be justified in believing that the prisoner is in capable hands. … Perhaps it would be a different matter if [the non-medical officials] had ignored [the plaintiff's] complaints entirely, but we can see no deliberate indifference given that [they] investigated the complaints and referred them to the medical providers who could be expected to address [any] concerns."); *McEachern v. Civiletti*, 502 F. Supp. 532, 534 (N.D. Ill. 1980) ("[Defendants] are prison administrators, not licensed medical practitioners. Lacking the requisite expertise, they must necessarily place their confidence in the reports of prison doctors whenever an inmate disputes a medical opinion as to what treatment is necessary and proper."). An exception to this general rule applies, subjecting

non-medical officials to liability, "in the unusual case where it would be evident to a layperson that a prisoner is receiving inadequate or inappropriate treatment." *Bond v. Aguinaldo*, 228 F. Supp. 2d 918, 920 (N.D. Ill. 2002); *see also Johnson v. Doughty*, 433 F.3d 1001, 1010 n.9 (7th Cir. 2006) (non-medical officers may be held liable for deliberate indifference if they have "reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner") (citation omitted).

Taking Donelson's allegations as true and drawing all reasonable inference in his favor, this is among the unusual cases where it would have been apparent to non-medical prison officials that the medical officer did not exercise appropriate medical judgment. Defendants knew that Donelson's head was repeatedly slammed against the floor, wall, cell bars, and cell doors; that he was punched in the head, hit with protective shields, kicked in the chest and body, sprayed with pepper spray, and knocked to the ground; that he was bleeding from the head and the face; and that he received burns from being held under extremely hot water. The medical technician did not conduct an actual physical examination and, despite Donelson's readily apparent physical injuries, advised a course of "treatment" consisting of running water on Donelson's head. Given these allegations, whose truth must be assumed at this stage, Donelson has adequately pled that Defendants were deliberately indifferent to his injuries. *See*, *e.g.*, *Gravley v. Tretnik*, 2011 WL 642271, at *2 (3d Cir. Feb. 23, 2011) ("Because [plaintiff] alleged that [non-medical] Administrator Tretnik was aware of an allegedly untreated serious medical need but failed to take any action, his claim is cognizable."); *Clasen v. IDOC*, 2008 WL 835468, at *2-3 (C.D. Ill. Mar. 27, 2008) (where plaintiff alleged his pain and immobility "would have been obvious, even to a layperson," claim survived); *Boey v. Briley*, 2003 WL 22388965, at *8 (N.D. Ill. Oct. 20, 2003) (where plaintiff, who had been evaluated by medical technicians,

alleged that lay Defendants knew his medical conditions were not being properly assessed or recorded, claim survived).

B.     **Count III:  Failure to Protect**

A "prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). Deliberate indifference means that an official was "subjectively aware" of an objectively serious risk. *Id*. at 829.  "[A] prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id*. at 847; *see also Santiago v. Wells*, 599 F.3d 749, 762 (7th Cir. 2010).  Donelson's failure to protect claim has two components, which are considered in turn.

The first component alleges that Defendants were deliberately indifferent to the substantial risk of assault that he faced when forced to share a cell with Davenport.  Donelson claims that he was "emotionally injured" by Defendants' "failure to protect" him during the roughly one year he shared a cell with Davenport.  Doc. 45, ¶ 71.  Donelson also argues that he suffered injury from witnessing Davenport's attempt to cut off his own penis.  No actual assault against Donelson is alleged to have occurred, however, and the threat from Davenport ceased after Donelson was transferred to another facility.

These facts doom this component of Donelson's failure to protect claim.  Donelson cannot state a claim for having been exposed to Davenport's self-mutilation.  *See Franklin v. Sheahan*, 1998 WL 312120, at *3 (N.D. Ill. June 5, 1998) (inmate "forced to witness uncontrolled violence inflicted on other[s]" did not state a failure to protect claim).  Nor can Donelson state a claim for having been exposed to the unrealized risk of assault from Davenport.

"However legitimate [Donelson's] fears may have been, … it is the reasonably preventable assault itself, rather than any fear of assault, that gives rise to a compensable claim under the Eighth Amendment." *Babcock v. White*, 102 F.3d 267, 272 (7th Cir. 1996).

In *Babcock*, the plaintiff inmate alleged that prison officials violated the Eighth Amendment by housing him in a prison that placed him at risk of violent attack from members of the Mexican Mafia gang. *Id*. at 271. The inmate, however, had never been attacked and had been transferred to a prison that did not present a threat of attack from that gang. The Seventh Circuit held that the inmate did not have a viable failure to protect claim, explaining that any psychological fear he experienced prior to his transfer did not constitute a deprivation of the "minimal civilized measures of life's necessities" required even in prison. *Id*. at 272 (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). The court held that, "[s]imply put, Babcock alleges, not a failure to prevent harm, but a failure to prevent exposure to risk of harm. This does not entitle Babcock to monetary compensation." *Ibid*. The court recognized the possibility that a claim for damages might lie in these circumstances where a defendant places an inmate in danger with "malicious or sadistic intent," *id*. at 270, but no such allegation was made in *Babcock*, and none is made here.

The second component of Donelson's failure to protect claim alleges that his "sexual predator" classification was wrongly imposed, has had a stigmatizing effect, and has exposed him to potential violence from the general prison population. The fact that Donelson has not suffered an actual attack means, under *Babcock*, that he cannot recover damages for the allegedly improper designation. But injunctive relief is potentially available because—unlike the danger posed by Davenport, which dissipated when Donelson was transferred to another prison—Donelson remains subject to a "sexual predator" classification and the risks allegedly

resulting therefrom. *See Farmer*, 511 U.S. at 845 (injunctive relief remains available "to prevent a substantial risk of serious injury from ripening into actual harm"); *Babcock*, 102 F.3d at 272-73 (same).

Donelson's claim fails nonetheless under the res judicata doctrine. In 2008, Donelson filed suit in the Central District of Illinois, alleging that IDOC officials had incorrectly and without due process designated him as a "sexual predator," which allegedly had the effect of "putting his life in jeopardy." *Donelson v. Walker*, No. 08-C-3186-HAB-CHE, slip op. at 1 (C.D. Ill. Nov. 12, 2008) (Doc. 87-1 at 8). On an initial merit review of Donelson's complaint under 28 U.S.C. § 1915A, the court dismissed the case for failure to state a claim, reasoning that the sexual predator designation, even if erroneous, did not violate due process. *Donelson*, *supra*, slip op. at 3-4 (Doc. 87-1 at 10-11).

The preclusive effect of the Central District's judgment is governed by federal common law. *See Taylor v. Sturgell*, 553 U.S. 880, 891 (2008). Defendants invoke the branch of res judicata known as claim preclusion, which provides that "a final judgment forecloses successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit." *Id*. at 892 (internal quotation marks omitted). The requirements of res judicata are: "(1) a final judgment on the merits in a prior action; (2) the identity of the cause of action in both the prior and subsequent suits; and (3) the identity of parties or privies in these suits." *Crop-Maker Soil Servs., Inc. v. Fairmount State Bank*, 881 F.2d 436, 439 (7th Cir. 1989). In addition, the party against whom res judicata is invoked must have had a "full and fair" opportunity to litigate the issue in the prior suit. *Hicks v. Midwest Transit, Inc.*, 479 F.3d 468, 471 (7th Cir. 2007).

Donelson's principal submission is that he did not have "a full and fair opportunity to litigate his wrongful designation claim" in the Central District. Doc. 97 at 11. Donelson suggests that the Central District erred on the merits by relying on inapposite authority. *See id.* at 11 n.2. A litigant, however, may not collaterally attack a prior judgment simply by arguing that it was incorrectly decided. *See Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981) ("Nor are the res judicata consequences of a final, unappealed judgment on the merits altered by the fact that the judgment may have been wrong.").

Donelson also contends that he did not have a full and fair opportunity to litigate in the Central District case because "he was denied the right to proceed *in forma pauperis* … and could not afford the filing fee to appeal Judge Baker's decision," which led to his suit being "dismissed on appeal for failure to pay the required docketing fee." Doc. 97 at 11. In fact, Donelson first moved to voluntarily dismiss his appeal without prejudice, which the Seventh Circuit denied on the ground that he was seeking improperly to "reserve the right to reopen th[e] appeal at a later date." *Donelson v. Walker*, No. 08-4155 (7th Cir. Feb. 24, 2009) (Doc. 98, Ex. D). When Donelson subsequently failed to pay the required docketing fee, his appeal was dismissed. *See Donelson v. Walker*, No. 08-4155 (7th Cir. May 21, 2009). Donelson's failure to pursue his appeal does not mean that he lacked a full and fair opportunity to litigate his claim. *See Lee v. City of Peoria*, 685 F.2d 196, 201 (7th Cir. 1982); *MacKay v. Crews*, 2009 WL 5062119, at *6 (E.D.N.Y. Dec. 16, 2009) (failure to appeal because of "alleged lack of funds" did not deprive party of a full and fair opportunity to litigate claim).

Donelson addresses the first three requirements of res judicata in a footnote, stating:

> Even if Donelson had been provided a full and fair opportunity to litigate his claim, the IDOC Defendants have not demonstrated that the other three elements are met for *res judicata* to bar relitigation of the claim. There is

> no identify of the parties where the Defendants are different. Moreover, the
> IDOC Defendants and other Defendants have engaged in a continuing
> violation in this case, and through the ongoing designation of Donelson
> which he may now contest.

Doc. 97 at 11 n.3. These arguments are forfeited because they are undeveloped and presented without any authority whatsoever. *See White Eagle Coop. Ass'n v. Conner*, 553 F.3d 467, 476 n.6 (7th Cir. 2009); *United Auto. Ins. Co. v. Veluchamy*, ___ F. Supp. 2d ___, 2010 WL 4284919, at *6 (N.D. Ill. Nov. 1, 2010) ("perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived"). The arguments are meritless in any event.

First, the Central District's decision was a final judgment on the merits. Donelson's lawsuit was dismissed in conjunction with the court's merits review under 28 U.S.C. § 1915A, which imposes the same standard as 28 U.S.C. § 1915(e)(2)(B)(ii), and which the Central District noted was "the same as the motion to dismiss standard." *Donelson*, *supra*, slip op. at 1 (Doc. 87-1 at 8). Dismissal under that standard constitutes a "final judgment on the merits" for preclusion purposes. *See Cieszkowska v. Gray Line N.Y.*, 295 F.3d 204, 205 (2d Cir. 2002) (dismissal under 28 U.S.C. § 1915(e)(2)(B)(ii) precludes "any subsequent litigation by the same parties … concerning the transaction, or series of connected transactions, out of which the [first] action arose") (citation omitted); *Harmon v. Webster*, 263 Fed. Appx. 844, 845 (11th Cir. 2008) (dismissal under 28 U.S.C. § 1915(e)(2)(B)(ii) "satisfies the elements of *res judicata*"); *Banks v. Hayward*, 2007 WL 120045, at *4 (W.D. Pa. Jan. 10, 2007) ("A dismissal for failure to state a claim upon which relief can be granted under the PLRA screening provisions, constitutes a 'final judgment on the merits.'").

Second, although Donelson pursued a due process theory in the Central District and an Eighth Amendment claim here, the causes of action arise from the same incident—Donelson's designation as a sexual predator—and thus are identical for preclusion purposes. *See Crop-Maker Soil Servs.*, 881 F.2d at 438 (res judicata doctrine provides that plaintiffs may not "split[] a single cause of action and [employ] several theories of recovery as the basis for separate suits"). And third, although the specific IDOC employees named in this suit are not identical to those named in the Central District, the defendants are plainly in privity. *See Micklus v. Greer*, 705 F.2d 314, 317 (8th Cir. 1983) ("A government employee may, in some cases, take the benefit from a prior judgment in favor of another employee of the same agency.") (discussing *Church of the New Song v. Establishment of Religion*, 620 F.2d 648, 654 (7th Cir. 1980) (where both suits are against prison officials, defendants are in privity)); *ibid.* ("A plaintiff may not sue a succession of state employees on the same claim solely on the ground that each employee is not 'identical' to previously sued employees.").

To summarize, the first component of Donelson's failure to protect claim in Count III (being celled with Davenport) fails to state a claim because Donelson was not attacked and no longer faces the threat, while the second component (wrongful designation as a sexual predator) is barred by res judicata.

### C.    Counts IV and V: State Law Assault and Battery

Counts IV and V, which sound in Illinois law, allege that Prado, Dever, Kirk, Bryant, Cole, and Hayden committed assault and battery against Donelson. Defendants maintain that the sovereign immunity doctrine under Illinois law "removes subject matter jurisdiction over Counts IV and V from this Court … because the Illinois Court of Claims has sole jurisdiction over state law negligence and tort claims arising out of a state employee's breach of a duty that is imposed

on him solely by virtue of his state employment." Doc. 87 at 11-12. When presented with a state law claim against a state agency or state employee, a federal court applies Illinois sovereign immunity principles to the extent an Illinois court would. *See Turner v. Miller*, 301 F.3d 599, 602 (7th Cir. 2002); *Nelson v. Murphy*, 44 F.3d 497, 505 (7th Cir. 1995). A motion to dismiss on sovereign immunity grounds is considered under Rule 12(b)(6), not Rule 12(b)(1). *See Blagojevich v. Gates*, 519 F.3d 370, 371 (7th Cir. 2008) (sovereign immunity is "non-jurisdictional," and "does not diminish a court's subject-matter jurisdiction"); *Wright-Gray v. Ill. Dep't of Healthcare & Fam. Servs.*, 2010 WL 381115, at *2 n.1 (N.D. Ill. Jan. 26, 2010); *Meyers v. S. Ill. Univ. at Carbondale*, 2009 WL 3719392, at *1 (S.D. Ill. Nov. 5, 2009).

The sovereign immunity defense here fails on the merits. A state law claim is barred by sovereign immunity only if, among other things, "the duty alleged to have been breached was not owed to the public generally independent … of State employment." *Jinkins v. Lee*, 807 N.E.2d 411, 418 (Ill. 2004) (citation and internal quotation marks omitted). For the reasons ably set forth in *Cruz v. Cross*, 2010 WL 3655992, at *4 (N.D. Ill. Sept. 10, 2010), the duty to not commit an assault or a battery arises independently of state employment, which means that sovereign immunity does not defeat Donelson's assault and battery claims. *See id.* at *4 ("To the extent that these claims involve a duty, it is a duty that all people owe to all other members of the general public. Consequently, any liability [defendants] may have for assault and battery arises independently of [their] State employment."); *Edmonds v. Carter*, 2000 WL 88839, at *4 n.5 (N.D. Ill. Jan. 21, 2000) ("the duty not to commit assault and battery is a general duty imposed upon all persons, and does not arise by virtue of defendant's state employment.").

### D. Shaw

Defendants seek dismissal of all claims against Shaw, the warden of Stateville. The amended complaint alleges that Shaw "was responsible for the overall administration of the operation of Stateville, including the security of the facility and delivery of programs and services at the facility." Doc. 45, ¶ 19. To state a claim under § 1983, however, Donelson must allege that Shaw was personally involved in at least one of the constitutional and state law violations. *See Whitford v. Boglino*, 63 F.3d 527, 530-31 (7th Cir. 1995); *Felton v. Ericksen*, 366 Fed. Appx. 677, 679-80 (7th Cir. 2010); *Smith v. Husz*, 384 Fed. Appx. 514, 515 (7th Cir. 2010). Because Donelson does not allege that Shaw ordered, had knowledge of, or consented to the alleged violations, the § 1983 claims against him are dismissed. *See Steidl v. Gramley*, 151 F.3d 739, 742 (7th Cir. 1998) ("an inference that a warden is directly involved in a prison's daily operations is not reasonable"); *Pacelli v. deVito*, 972 F.2d 871, 878 (7th Cir. 1992) (doctrine of *respondeat superior* does not apply to § 1983 actions). The same holds for the state law claims against Shaw. *See Payne for Hicks v. Churchich*, 161 F.3d 1030, 1044 (7th Cir. 1998). If Rule 11 permits, Donelson may attempt to amend his complaint to state a viable claim against Shaw.

### E. Bronzwik

In his separate motion to dismiss (Doc. 101), Bronzwik contends that there are no separate allegations against him personally; in the alternative, he seeks to join the principal motion to dismiss (Doc. 86). The amended complaint does allege that Bronzwik received and ignored Donelson's kites regarding his being celled with Davenport (*see* Doc. 45, ¶¶ 38-39), so Bronzwik's first argument is rejected. But because Bronzwik is mentioned only in connection with the allegations underlying Count III, which has been dismissed, he is dismissed as a party

defendant. If Rule 11 permits, Donelson may attempt to amend his complaint to link Bronzwik to the allegations underlying Counts I-II and IV-V and to reinstate him as a defendant.

    F.    **Lynch and Tolley**

Lynch and Tolley have moved to dismiss and alternatively for summary judgment (Doc. 78). There is no need to resolve the summary judgment motion, for Lynch and Tolley, like Bronzwik, are mentioned only in connection with the allegations underlying Count III, which means that they, too, are dismissed as party defendants. As with Bronzwik, Donelson may attempt to amend his complaint to link Lynch and Tolley to the allegations underlying Counts I-II and IV-V and to reinstate them as defendants.

**Conclusion**

Count III is dismissed, while Counts II, IV and V (along with Count I) remain pending. All claims against Defendants Shaw, Bronzwik, Lynch, and Tolley are dismissed without prejudice, with leave to replead within 21 days; if such leave is not sought and granted, the dismissals without prejudice automatically will convert to dismissals with prejudice. In addition, because the amended complaint appears to specifically mention Defendants Blank, Woods, Fink, Frainey, Harrington, Bass, Malkowski, Michelle, Williams, and Norman only in conjunction with the allegations underlying Count III, Donelson is ordered to show cause by April 6, 2011, why those defendants should not be dismissed with prejudice as party defendants.

March 16, 2011                                         _____
                                                       United States District Judge